# Guthrie, for use of The First National Bank of Clarion, *versus* Reid.

1. A judgment creditor realized the amount of his claim from collateral security which he held. The debtor gave him notice that the amount due was disputed, and required him not to apply the collateral to its payment until the amount was determined. The plaintiff did so apply the funds in his hands and satisfied the judgment of record:

    *Held*, that this action was wrongful to the defendant, and that the court below was right in striking off the entry of satisfaction and admitting him to a defence.

2. Where a National Bank takes, receives or charges more than the legal rate of interest in the discount of a note, the interest bearing power of the note is destroyed, and remains destroyed until it is paid.

3. A. gave B. a judgment note for the latter's accommodation. B. had the same discounted by a National Bank at a usurious rate of interest. The bank having entered up the judgment note the defendant was opened, and the defendant let into a defence:

    *Held*, that the defendant could avail himself of the usurious discounts charged by the bank as a defence to the payment of interest.

4. The amount of an attorney's commission stipulated for in a judgment note is a question for the court in the exercise of its equity powers, and not for the jury. Where, however, the question has been erroneously submitted to the jury, the Supreme Court will not reverse if the amount found by the verdict appears to them to be reasonable.

5. A judgment confessed which had been paid by the proceeds of collateral security in the plaintiff's hands, and by him satisfied of record, was opened on the ground that it had been overpaid. The order of court provided that the judgment note should stand as a narr., and that " an issue is awarded to ascertain the amount due the plaintiff on this judgment January 7th, 1881. And the amount of over-payment (if any) applied to the satisfaction of the same ":

    *Held*, that the order was improper, and that the only proper issue was the amount due on the judgment.

[Guthrie v. Reid.]

6. A docket entry of a judgment which is not supported by the record, and which appears on its face to be a clerical error, will be stricken off by the Supreme Court.

October 7th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Clarion county:* Of October Term, 1884, No. 48.

Judgment was entered in the court below on October 1st, 1878, in the name of J. W. Guthrie, for use of The First National Bank of Clarion against John C. Reid, upon a judgment note dated June 20th, 1878, for $3,050, payable ninety days after date, with 5 per cent. attorney's fees for collection, thus making the damages assessed on the note amount to $3,202.50. On January 7th, 1881, the judgment was satisfied and the following receipt entered on the docket:—

" Received January 7th, 1881, from the defendant, $3,633.94, in full of debt, interest and costs, money realized on Ralph Bagley note.        G. W. ARNOLD, Cashier."

On February 3d, 1881, upon the defendant's application, a rule was granted to show cause why this entry of satisfaction should not be stricken off and the judgment opened, on the ground that the note represented the last renewal of a series of notes which Reid had given to Guthrie for his accommodation, and which had been discounted by the plaintiff at a usurious rate of interest, and that the attorney's commission charged was excessive. The court made the following order on the hearing of the rule :

" It is ordered, that the rule in this case be made absolute, and that the judgment be opened, for the purpose of enabling the defendant to defend against the payment of interest included in the note on which this judgment was entered. Also to reduce the attorney's commission to a reasonable allowance for the professional services rendered ; and an issue is awarded to ascertain the amount due the plaintiff on this judgment January 7th, 1881, and the amount of over-payment (if any) applied to the satisfaction of the same. It is further ordered, that in said issue the note on which judgment was entered shall stand as a narr., and shall be evidence prima facie of the plaintiff's claim in chief, and that the defendant may defend, as hereinbefore indicated, on the plea of payment with leave," &c.

On the trial, before KNOX, P. J., it was shown on behalf of the defendant that the first of the series of defendant's notes was discounted by the bank for Guthrie on April 5th, 1877. It was for $3,000, and payable four months after its date,

[Guthrie v. Reid.]

April 5th, 1877. The cashier of the plaintiff bank was asked how much money was paid to Guthrie on the note. Objected to (1) for the reason that it is irrelevant in that no contract or stipulation made by Guthrie, the person from whom the bank bought the note, affords any defence to Reid, the maker, who was no party to the contract or stipulation, and (2) that the order opening the judgment does not involve an inquiry into the consideration of any note except the one now in dispute, dated June 20th, 1878. Objection overruled. Exception (first assignment of error).

The witness then stated that he paid Guthrie, when the note was discounted, $2,900; and further testified as to the various renewals of the loan down to the note in suit, and the several discounts paid at each renewal.

Reid, the defendant, testified that the notes in question were accommodation notes, and that no value had been paid him for them. On September 30th, 1878, he being financially embarrassed, made a general assignment for the benefit of his creditors to B. J. Reid, and on January 2d, 1880, both the assignor and assignee sold a piece of the assigned real estate to Ralph Bagley for $20,000, taking four notes for $5,000 each. One of these the assignee and assignor assigned on January 31st, 1880, to the bank, "as collateral to the claims now held by said bank against John C. Reid." This note was paid at maturity, January 2d, 1881, and on January 3d, 1881, B. J. Reid gave the following notice to G. W. Arnold, cashier of the bank:

"CLARION, PA., January 3d, 1881.
"G. W. ARNOLD, Cashier First National Bank of Clarion:

"Dear Sir—The five thousand dollar Bagley note assigned to the bank as collateral for claim you hold against J. C. Reid has been paid. You are hereby notified not to make any application of the proceeds to judgments Nos. 254, 255, and 256, of November Term, 1878, until the correct amounts due on said judgments can be liquidated, by throwing out or reducing the attorneys' commission, and making proper application of the principal of judgment No. 256, of the amounts retained as discounts or charge, and paid for renewals, John C. Reid having been only surety for James W. Guthrie in the loan covered by said judgment. Yours respectfully,
"B. J. REID,
"Assignee of John C. Reid, for the benefit of creditors."

The bank at this time held, including the judgment in dispute, four claims against John C. Reid.

Testimony was given on both sides as to the value of the attorney's services.

The plaintiff requested the court to charge as follows :

1. That when the defendant put the collateral into the hands of the equitable plaintiff, to pay the judgment, so far as the proceeds of that collateral was concerned, it was out of his power to set up usury to defeat the application of the collateral, as it was agreed it should be at the time of its receipt. Refused.

2. That the jury cannot, in this action, allow the defendant for any interest paid by J. W. Guthrie. Refused.

3. That the jury cannot, in this action, allow the defendant the benefit of any stipulation or agreement made by J. W. Guthrie with the bank to which the defendant was not a party. Refused.

4. That if John C. Reid, the defendant, loaned his note to J. W. Guthrie, and J. W. Guthrie sold it to the use of plaintiff, at a greater discount than six per cent., and John C. Reid made no contract or stipulation, nor paid any interest to the bank on the note, he cannot set up any transaction the bank had with Guthrie as a defence. Refused.

6. That if, when the plaintiff had instituted proceedings to enforce collection against John C. Reid, he and his assignee obtained a stay for one year on this judgment, and on other claims the bank had against him, in consideration whereof he transferred the Bagley note as collateral security for the payment of this judgment and the other claims, the plaintiff had a right to apply the amount of the collateral to the payment of this judgment, as it was then agreed for and stipulated by the parties ; and if he so applied the money it would be a rightful application, and would be a payment of this judgment, and he cannot now defend for alleged usury thereon. Refused (3d, 4th, 5th, 6th and 7th assignments of error).

The court affirmed the following points submitted by the defendant :

1. If the jury believe from the evidence, that at the time of discounting the first note of $3,000.00, interest or discount was charged, or stipulated for, at a greater rate than six per cent. per annum, and that said interest or discount was not actually paid by the borrower, but was included in the note, to be paid with the note at maturity, such contract or agreement for usurious interest destroyed the interest-bearing quality of the note—and the bank could not lawfully collect any interest whatsoever on said note, or on any subsequent note given in renewal of the original loan.

2. If the jury believe from the evidence, that the note on which judgment in this case was entered was one of a line of notes given in renewal of said first note, and that interest or discount at a greater rate than six per cent. per annum was

[Guthrie v. Reid.]

included in the note, no interest whatever could be lawfully collected by the bank on said renewal note, and nothing could be recovered thereon except the original loan of $2,900.00 if that was the actual amount of the money loaned by the bank in the original transaction.

3. If the jury find the facts to be as stated in the first two points, the jury (in ascertaining how much was due in this case by John C. Reid to the bank on the 7th of January, 1881,) should allow the plaintiff bank for the amount of the original loan, without interest, and such compensation for professional services in the matter of the collection of the claim, as the jury may find to be reasonable under all the evidence, and the docket costs. (8th, 9th and 10th assignments of error.)

The court left it to the jury to determine from the evidence how much the attorney's services were reasonably worth.

The jury found the following verdict:

"Aug 21, '83, We find there was due the plaintiff on this judgment Jan'y 7th, 1881, at the date he applied a part of the proceeds of the collateral (Ralph Bagley) note as follows:

| | | | |
|---|---|---:|---:|
| "On the debt, | - - | $3000.00 | $3000.00 |
| "Att'ys commission, | - - | 63.00 | 63.00 |

"Total am't of judgm't and att'ys com.   -   $3063.00

"We find the excess of application applied by plaintiff to the payment of this judgment on Jan'y 7th, 1881, to be 560.15." On this verdict judgment was entered. The verdict and judgment were entered upon the docket as follows:

"August 21, 1883, jury being called, came and were sworn, as per minutes, who find for plaintiff, Jno. C. Reid, for five hundred and sixty dollars and fifteen cents.

"January 24th, 1884, The jury fee having been paid, judgment is hereby entered on the verdict *secundum regulam.*"

The plaintiff thereupon took this writ of error, assigning for error the admission of the testimony of the cashier of the plaintiff bank, and the answers to the defendant's and plaintiff's points as above noted, and the action of the court in opening the satisfied judgment.

*Jenks* (with whom was *Wilson*), for plaintiff in error.—The judgment against Reid was fully paid and satisfied, and the court had no power to strike off the entry of satisfaction: Schnitzler *v.* Hammill, 1 W. N. C. 471; McCalla *v.* Brennan, 14 W. N. C. 513. It is settled, that where usury has been actually paid to a National Bank, it cannot be used as set-off or defalcation to the payment of the note; but the only remedy for its recovery is for the penalty under the Act

of Congress: Barnet *v.* National Bank, 8 Otto 555; First National Bank of Clarion *v.* Gruber, 10 Norris 377; National Bank of Fayette County *v.* Dushane, 15 Norris 340. The right to recover back the interest paid, is recoverable only by " the person paying the same, or his legal representatives:" Revised Statutes of the United States, page 1012, § 5198; Bly *v.* Second National Bank of Titusville, 29 P. F. S. 453. Hence it was irrelevant in this trial to ask how much discount J. W. Guthrie paid: First National Bank of Clarion *v.* Gruber, 10 Norris 377. The loss of interest on account of usury is expressly made a forfeiture by the Revised Statutes § 5198, page 1012. That forfeiture cannot be legally extended by construction. It is only the interest that the " note carries with it, or that which has been agreed to be paid thereon," that is forfeited. The statute provides for two different contingencies: one, where the note bears or carries with it interest. When the note carries interest, that interest is forfeited under the first clause. Where the note does not carry interest, then that *which was agreed to be paid thereon* is forfeited. The note in this case did not carry interest: then the forfeiture was only of that which was agreed to be paid thereon. All that was agreed to be paid thereon in this case that was not paid, (as claimed by the defendant,) was one hundred dollars, when the first note of the series was discounted, and fifty dollars which was afterwards included in one of the notes at a subsequent renewal. As claimed by the plaintiff, there was only the fifty dollars which was included in one of the notes. Then, one of those amounts should have been the extent of the forfeiture.

*B. J. Reid* (with whom were *A. B. Reid* and *W. L. Corbett*) for the defendant in error.—The order of the court opening the judgment cannot be reviewed on a writ of error: Hill *v.* Irwin, 8 Casey 314; Putney *v.* Collins, 3 Grant 72. The opening of a satisfied judgment is sustained by Montague *v.* McDowell, 3 Out. 269. The application of the money by the bank after notice not to apply it till the judgment could be liquidated was a wrong of which the bank cannot take advantage: Moloney *v.* Davis, 12 Wright 512; Guthrie *v.* Bashline, 1 Casey 80. Reid is not suing to recover usurious discounts paid by Guthrie, and therefore Bly *v.* National Bank, 29 P. F. S. 453, Barnet *v.* National Bank, 8 Otto 555, have no application: Miller *v.* Irwin, 4 Norris 376. Only the sum lent can be recovered without interest: Barnet *v.* National Bank, 8 Otto 558; Lebanon National Bank *v.* Karmany, 2 Out. 75; Lucas *v.* National Bank, 28 P. F. S. 231; National Bank *v.* Hoagland, 10 W. N. C. 123. The entry of the ver-

[Guthrie v. Reid.]

dict and judgment as against the plaintiff was a mere clerical error.

Mr. Justice Paxson delivered the opinion of the court January 5th, 1885.

The court below was entirely right in opening the judgment held by the Bank against John C. Reid. The satisfaction of the judgment after notice that the amount was disputed was improper, and if not corrected in some form, was calculated to work injustice to Reid, for the reason that when he should attempt to call the bank to account for the proper application of his collateral, the bank could say to him, The judgment which we satisfied is conclusive upon you as to the amount due thereon. Nor do we see any breach on the part of Reid of the contract with the bank by which the proceeds of the Bagley note were to be applied to the claims the bank held against him. This judgment was not specified in said contract; it was doubtless included; but this did not justify the bank in applying more money on the judgment than was due thereon, especially in the face of a notice not to do so.

It is settled law that where a national bank takes, receives or charges more than the legal rate of interest in the discount of a note, the interest-bearing power of the note is destroyed. And when once so destroyed, it remains so. The taint of the usury clings to it until paid. · It is a dead note thereafter, so far as interest is concerned: Lucas v. The Bank, 28 P. F. S. 231; Bank v. Karmany, 2 Out. 65. The rule thus indicated is a sound one. The object of the Act of Congress is to punish national banks for such violation of the law. The obvious way to avoid the punishment is not to commit the offence.

It was urged, however, that Reid, the maker of the note, cannot avail himself of this defence because the illegal interest was paid by Guthrie, for whom the note appears to have been discounted. The answer to this is that the bank, by its act, has destroyed the interest-bearing power of the note, and can recover no interest upon it from anybody. If this had been a suit by Reid to recover back interest paid by Guthrie, we would have had a different question, and Bly v. The National Bank, 29 P. F. S. 453, and other authorities cited by plaintiff in error, might have had some application.

What has been said we think sufficiently covers the first nine assignments of error. It was error, however, to submit to the jury the question of the amount of the attorney fee. It was settled in Daly v. Maitland, 7 Norris 384, that this is a question for the court in the exercise of its equity powers, and is not a proper one for submission to a jury. We do not see,

11 Outerbridge.—17

however, that any harm has been done by the submission in this particular instance, as the amount fixed by the jury is not unreasonable. We will not, therefore, reverse for this reason. But we point out the error that it may not be made a precedent.

Some minor errors have crept into the case which must be corrected. They are due in part to the fact that the order for the issue was too broad. The issue itself was exceedingly informal and vague. The order provided that the note on which judgment was entered should stand as a narr., and that "an issue is awarded to ascertain the amount due the plaintiff on this judgment January 7th, 1881. And the amount of overpayment (if any) applied to the satisfaction of the same." The latter clause of the issue should have been omitted. The only proper issue was the amount due upon the judgment. That settled, the amount of overpayment becomes a mere matter of arithmetic, about which there could be no dispute, and which could not be properly determined in this proceeding.

The verdict of the jury followed the vice of the order. It was as follows:

"August 21, 1883. We find there was due the plaintiff on this judgment, January 7th, 1881, at the date he applied a part of the proceeds of the collateral (Ralph Bagley) note, as follows:

| | | |
|---|---|---|
| On the debt, . . . . . . | $3,000 00 | $3,000 00 |
| Att'y's commissions, . . . | 63 00 | 63 00 |
| | | |
| Total am't of judgm't and att'y's com., | | $3,063 00 |

We find the excess of application applied by plaintiff to the payment of this judgment on January 7th, 1881, to be $560.15."

The latter part of the finding we may reject as surplusage. The proper finding, viz., the amount due on the judgment, is complete without it; and we can thus preserve all that is pertinent and valuable in the verdict.

The finding of "the excess of application" led to another blunder. Upon it the prothonotary has entered a judgment in favor of Jno. C. Reid in the sum of $560.15. There is nothing whatever upon the record to base such a judgment upon; it was probably an error in the officer who entered it, and it is a matter of some surprise that it was not corrected below. It doubtless would have been had it been called to the attention of the learned court. As it is a mere excrescence upon the record, we can correct it here.

The entry of August 21st, 1883, purporting to be an entry

of judgment in favor of John C. Reid for $560.15, is stricken
from the record.   Subject to this modification the proceedings
below are
                                                        Affirmed.